IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-02141-PSF

LINDA C. BLEYMEYER,

> Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

> Defendant.

---

## ORDER ON SOCIAL SECURITY APPEAL

---

This matter was set for oral argument on September 22, 2006 on plaintiff's appeal of denial of social security benefits.  The Court having received the written arguments and submissions of counsel and having reviewed the record, has vacated the September 22nd hearing, and now enters the following Order.

## I.    BACKGROUND

Plaintiff Linda Bleymeyer appeals from the decision of the Commissioner denying her application for social security disability benefits. The decision of the Commissioner became final on August 26, 2005 when the Appeals Council notified plaintiff that it found no reason to review the decision of the Administrative Law Judge ("ALJ"), which had been entered on April 18, 2005 (AR[1] 5-8).  Plaintiff timely filed her appeal from the final decision of the Commissioner on October 25, 2005.  The Court

---

[1]   The Administrative Record in this case (AR) consists of one volume, pp. 1-338.

has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C.§ 405(g).

Plaintiff filed her claim for benefits on or about April 21, 2003, apparently seeking disability benefits beginning August 15, 2002 due to neck and back pain, severe headaches, numbness in her hands, inability to remember, dizziness and occasional blackouts, all of which she claimed made it painful for her to move her head without pain, caused constant headaches, and affected her memory (AR 114).  The onset of her condition apparently followed a motor vehicle accident that occurred on February 27, 2001.  She also stated that she stopped working because of the headaches and the pain in her neck when she moved it, and because she began to experience dizzy spells and blackouts (AR 122).

After initial denial of her claims, plaintiff appealed and a hearing was held before the ALJ in Pueblo, Colorado on February 24, 2005 (AR 39-75).  Plaintiff testified at the hearing and was represented by counsel.  Also testifying was Martin Rauer, a vocational expert.  Upon review, her application was denied in the written decision of the Administrative Law Judge issued on April 18, 2005 (AR 19-28).

## II.    THE ALJ'S DECISION OF APRIL 18, 2005

In his written decision of April 18, 2005, the ALJ denied plaintiff's application for benefits at step five of the five-step process.  *See generally Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988).  In reaching this determination, the ALJ found plaintiff suffered from degenerative disc disease of the cervical spine with moderate foraminal narrowing on the left and possible carpal tunnel syndrome; some cognitive

2

disorder, pain disorder and affective disorder, neck strain and headaches, all considered to be severe impairments (AR 20, 27).  However, he found that none of these impairments or combination of impairments meet the criteria for a listed impairment under Appendix 1 to Subpart P of the regulations.  Plaintiff does not contest on appeal this last finding.

The ALJ found that with the above impairments plaintiff had the residual functional capacity to perform light exertional activity, including lifting and/or carrying up to 20 pounds occasionally and ten pounds frequently; sitting, standing and/or walking up to six hours per day each with the option of alternating as needed, but if required could sit or stand and/or walk up to 30 minutes at a time; pushing and pulling to exertional limits; limited bilaterally to occasional reaching above the shoulder level, with no climbing of ladders, ropes, or scaffolds, and occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching or crawling; and needing to avoid concentrated exposure to extreme cold, vibrations, and unprotected hazards (AR 24; 27-28).  He further found that she is limited to semi-skilled work due to moderate limitations in her ability to maintain concentration, persistence or pace (*id.*).

In arriving at this RFC the ALJ relied upon the report and opinion of the consulting agency medical expert, Dr. Ian Happer, who issued a residual functional capacity ("RFC") assessment dated August 12, 2003 (AR 153-60).  The ALJ's RFC findings are virtually identical to Dr. Happer's conclusions.  Dr. Happer, however, did not examine the plaintiff but apparently only reviewed some of her medical records.

In arriving at the RFC findings, the ALJ declined to accept the report and opinion of Dr. Velma Campbell, an agency consultant who examined plaintiff on July 1, 2003 at the request of Colorado Disability Determination Services (AR 286-88).  Dr. Campbell's assessment of plaintiff's physical capabilities was more limiting than the assessment of Dr. Happer, in that she opined that plaintiff was limited to lifting and carrying ten pounds occasionally, with walking and standing  "probably would be limited to 30 minutes at a time" and four hours for a whole day, and with the restriction that "[c]limbing ladders and step-stools should be avoided completely." (AR 288).

The ALJ explained that he gave "less weight" to Dr. Campbell's assessment because adopting her description of the limitations required that he accept claimant's asserted level of pain and "her presentation to the doctors as credible," which he declined to do (AR 25).  Because he declined to give "full weight to the claimant's allegations of pain," he gave less weight to Dr. Campbell's opinion concerning plaintiff's functional limitations (*id*.).  The ALJ stated he gave greater weight to Dr. Happer's assessment because he "considered all of the former evaluations."  (*Id*.)

The ALJ further determined that plaintiff could not return to her past relevant work as a secretary (*id*.), and plaintiff's exertional limitations do not allow her to perform the full range of light work (AR 28).  Nonetheless, using Medical-Vocational Rule 202.07 ("grid rule") as a framework, he found there are a significant number of jobs in the national economy in the category of light semi-skilled work that plaintiff could perform, including information clerk, telemarketer, dealer account investigator and

4

surveillance system monitor (*id.*).  Therefore, he concluded she was not under a disability as defined in the Act (*id.*).

### III.    PLAINTIFF'S APPEAL

On appeal plaintiff argues that substantial evidence in the record does not support the ALJ's determination for several reasons.  She first argues that the ALJ improperly rejected Dr. Campbell's opinion and failed to reach a proper RFC because he improperly weighed the medical evidence.  She also argues that the ALJ misapplied the grid rules by relying on Rule 202.07 rather than Rule 202.06.  Furthermore, she contends that there was insufficient evidence to support the finding that her moderate deficit in concentration would still allow for performance of semi-skilled work (Plaintiff's Opening Brief at v-vi, 4-7).

### IV.    ANALYSIS

For the reasons set forth below, the Court finds that it need only address the plaintiff's first argument and that a remand of this case to the Commissioner is required.

The Social Security regulations for evaluating medical opinion evidence, set forth at 20 C.F.R. § 404.1527(d), provide that the Commissioner will evaluate every medical opinion received, and unless controlling weight is given to a treating physician's opinion, the Commissioner will apply the factors listed in subsections 20 C.F.R. § 404.1527(d)(1) through (6).  In the instant case, the parties agree that there was no opinion from a treating physician expressly assessing plaintiff's residual functional capacity.  The regulations further provide, however, "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a

source who has not examined you."  20 C.F.R. § 404.1527(d)(1).  Here, the ALJ did not

give more weight to the opinion of the examining physician, Dr. Campbell, than he gave

to the assessment of the non-examining physician, Dr. Happer.  This appears to

contradict the case law which holds that "[t]he opinion of an examining physician is

generally entitled to less weight than that of a treating physician, and the opinion of an

agency physician who has never seen the claimant is entitled to the least weight of all."

*Robinson v. Barnhart*, 366 F.3d 1078 1084 (10th Cir. 2004)

Moreover, even though Dr. Campbell was not plaintiff's treating physician, the

case law requires that the ALJ give consideration to her opinion, and articulate the

reasons for its nonacceptance.  *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003)

("Even though Dr. Webb was not a treating physician, the ALJ was still required to

consider his opinion, *see* 20 C.F.R. § 416.927(d) . . . and to provide specific, legitimate

reasons for rejecting it.") (Citations and internal quotations omitted).

In this case, the only reason given by the ALJ for discounting Dr. Campbell's

opinion was the fact that she relied in part on plaintiff's claim of her own level of pain,

which the ALJ did not find credible.  However, the opinion made clear that Dr. Campbell

herself discounted plaintiff's claimed level of pain, noting in her report that "[a]lthough

the [plaintiff's] functional limitations exceed the findings on x-ray and examination, there

is a basis for significant impact on activities."  (AR 288).  The ALJ did not acknowledge

this considered factor in weighing Dr. Campbell's opinion and thus his stated reason for

discounting Dr. Campbell's opinion is questionable.

On the other hand, in evaluating the opinion of Dr. Happer, the nonexamining physician referred to as the "agency medical expert," the ALJ stated no reason for giving more weight to that opinion other than the comment that the doctor "considered all of the former evaluations." (AR 25). Yet, as plaintiff correctly points out, Dr. Happer's own report indicates that he apparently did not consider other medical evaluations, as he checked a box on the evaluation form denoting that there were no other examining source statements regarding the claimant's physical capacities in the reviewed file (AR 159). Although such action might be explained as a simple error that would not necessarily undermine the validity of a consulting physician report, by checking the box Dr. Happer also failed to follow through on the next questions on the form, to be answered if the previous answer were "yes," which inquired: 1) whether there were examining source conclusions about claimant's limitations that were inconsistent with Dr. Happer's, and 2) if so, an explanation for the differences was required. (*Id.*) Had Dr. Happer answered these question the ALJ may well have had a reason to reject the different opinion of Dr. Campbell, but with Dr. Happer either not in compliance with the form, or failing to review any examining source statement, the ALJ was left with no explanation for the difference between the two residual functional capacity assessments.

Because the ALJ was presented with conflicting medical opinions, he had to explain with some specificity why he relied on one and not the other. But given the fact that the ALJ's asserted reason for relying on Dr. Happer seems to misstate the record,

the Court cannot find that his conclusion is supported by substantial evidence on the record as a whole.

Finally, if the differences between Dr. Campbell's assessment and Dr. Happer's were not material the Court perhaps would not reach this result. However, because Dr. Happer found that plaintiff had the exertional capacity to lift and carry 20 pounds occasionally, whereas Dr. Campbell opines that she could lift no more than ten pounds occasionally, the difference between their opinions is material. Under the Social Security regulations, 20 C.F.R. § 404.1567, this difference determines whether plaintiff should be limited to sedentary work, which is defined as lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools, 20 C.F.R. § 404.1567(a), or whether, as the ALJ found, plaintiff is able to perform light work, which involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b).

In addition, Dr. Campbell found that plaintiff is limited to standing and walking no more than four hours in a day, and 30 minutes at a time (AR 288), whereas Dr. Happer opined that plaintiff could stand, walk or sit six hours in an eight-hour day (AR 154). Although the above quoted regulation does not expressly quantify the amount of standing, walking and sitting that differentiates between sedentary and light work, the regulation does provide that: "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). With respect to light

8

work the regulation states:  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  Thus, the difference between the findings of the two doctors with respect to plaintiff's abilities to stand, walk and sit may affect her maximum ability to perform light work versus sedentary work.[2]

If plaintiff were limited to sedentary work as apparently suggested by the medical opinion of Dr. Campbell, then the ALJ's finding that there are a significant number of light work jobs in the national economy that she could perform may not necessarily be supported by the record.  When presenting the hypothetical to the vocational expert, the ALJ directed the expert to assume that the person is "limited to the light exertional level." (AR 64).  Thus while some of the positions the vocational expert identified were also sedentary, some of them were strictly light work positions (*see* AR at 66).   On the basis of this uncertain record, this Court cannot state that the ALJ's ultimate conclusion that plaintiff is not disabled is based on substantial evidence as a whole.  As the Court remands this case for the above reasons, it does not address plaintiff's arguments regarding the proper grid to be applied or the sufficiency of evidence as to ability to perform semi-skilled jobs.

---

[2]   The Court also notes that Dr. Happer apparently did not restrict plaintiff's ability to climb ladders, ramps and stairs, as he checked "frequently" on the assessment form (AR 155). Yet, the Court notes, the word "never" is handwritten on that page of the form, perhaps suggesting that Dr. Happer meant to say plaintiff should never climb ladders, ramps and stairs. As noted above, Dr. Campbell did opine that plaintiff should complete avoid climbing ladders and step-stools.  This potential discrepancy should also be clarified on remand.

**CONCLUSION**

For the above reasons, the Court REMANDS this case to the Commissioner to reconsider the opinions of the two physicians and to clarify the basis for the findings as to plaintiff's residual functional capacity.

DATED: September 22, 2006.

BY THE COURT:

*s/ Phillip S. Figa*

_____

Phillip S. Figa
United States District Judge